1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

| | |
|---|---|
| SHARON COLEMAN-ASKEW, | CASE NO. C15-994-MJP |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| v. | |
| KING COUNTY, et al., | |
| Defendants. | |

11

12

13

14

15

16        THIS MATTER comes before the Court on Defendants' Motions for Summary Judgment

17   and Defendants' Motions to Strike.  (Dkt. Nos. 37, 43, 55, 57, 65.)  Having considered the

18   Parties' briefing and all related papers, the Court GRANTS the Motions to Strike and GRANTS

19   in part and DENIES in part the Motions for Summary Judgment.

20                                            **Background**

21        Plaintiff Sharon Coleman-Askew brings this employment discrimination action on the

22   basis of sex against Defendants King County, King County Department of Adult and Juvenile

23   Detention ("DAJD"), Captain Jerry Hardy, Dellia Hardy, Major Edwin Bautista, and Jane Doe

24   Bautista.  (Dkt. No. 4.)

1       Plaintiff, an African-American woman, has been employed as a King County

2  Correctional Officer since 1987.  (Id. at 2.)  Plaintiff alleges, inter alia, that she was sexually

3  harassed and discriminated against by her supervisor, Defendant Captain Hardy, who repeatedly

4  made inappropriate comments about her body and appearance, followed her to the workplace

5  gym to watch her exercise, held Plaintiff to a higher standard than other employees and gave her

6  unnecessary directives including where in the room to sit during roll call, unfairly denied

7  Plaintiff opportunities to work overtime hours, and generally bullied and intimidated Plaintiff

8  and other female employees.  (Dkt. Nos. 4 at 1-14, 53 at 2-15.)  Plaintiff alleges that Defendant

9  Major Bautista and other superiors at the DAJD knew of but failed to stop Captain Hardy's

10 harassment, and that Plaintiff was retaliated against after complaining of Captain Hardy's

11 harassment.  (Id.)

12      Plaintiff's complaint asserts a variety of causes of action under both state and federal law

13 stemming from the alleged employment discrimination.  (See Dkt. No. 4.)  However, Plaintiff

14 has voluntarily abandoned several of those claims, and only her claims for hostile work

15 environment sexual harassment, retaliation, and negligent supervision or retention remain.  (Dkt.

16 Nos. 53 at 15, 53-2 at 3 n.2.)

17      Defendants now move for summary judgment on Plaintiff's remaining claims.  (Dkt.

18 Nos. 37, 43.)  Plaintiff opposes the Motions as to the hostile work environment sexual

19 harassment claim and the retaliation claim, but has not opposed the Motions as to the negligent

20 supervision or retention claim.  (Dkt. Nos. 53, 53-2.)

21                     **Discussion**

22     I.     Legal Standards

23          A.     Summary Judgment

24

1    Summary judgment is proper where "the movant shows that there is no genuine issue as

2    to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3    56(a).  The moving party bears the initial burden of demonstrating the absence of a genuine issue

4    of fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In assessing whether a party has met

5    its burden, the underlying evidence must be viewed in the light most favorable to the non-

6    moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

7          B.    Title VII

8    Title VII provides that "[i]t shall be an unlawful employment practice for an employer to

9    fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any

10   individual with respect to his compensation, terms, conditions, or privileges of employment,

11   because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–

12   2(a)(1).

13   Absent direct evidence of discriminatory animus, claims of employment discrimination

14   are typically analyzed under the framework set out in McDonnell Douglas Corp. v. Green, 411

15   U.S. 792, 802 (1973).  Plaintiff bears the initial burden of establishing a prima facie case of

16   discrimination.  Once established, the prima facie case creates a rebuttable presumption that the

17   employer unlawfully discriminated against the employee.  Lyons v. England, 307 F.3d 1092,

18   1112 (9th Cir. 2002).  The burden of production shifts to the employer to articulate a legitimate,

19   nondiscriminatory reason for the plaintiff's rejection.  Id.  If the employer sustains the burden,

20   the plaintiff must then demonstrate that the proffered nondiscriminatory reason is merely a

21   pretext for discrimination.  Id.  This burden-shifting scheme is designed to assure that a plaintiff

22   has his or her day in court despite the unavailability of direct evidence.  Enlow v. Salem-Keizer

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 3

1    Yellow Cab Co., 389 F.3d 802, 812 (9th Cir. 2004) (citing Trans World Airlines, Inc. v.

2    Thurston, 469 U.S. 111, 121 (1985)).

3                    C.      Washington Law Against Discrimination

4           To overcome summary judgment under the Washington Law Against Discrimination

5    ("WLAD"), a plaintiff only needs to show that a reasonable jury could find that Plaintiff's

6    protected trait was a substantial factor motivating the employer's adverse actions.  Scrivener v.

7    Clark Coll., 181 Wn.2d 439, 445 (2014).  This is a burden of production, not persuasion, and

8    may be proved through direct or circumstantial evidence.  Id.  Where a plaintiff lacks direct

9    evidence, Washington courts use the burden-shifting analysis articulated in McDonnell Douglas

10   Corp. v. Green, 411 U.S. 792 (1973), to determine the proper order and nature of proof for

11   summary judgment.  Id.

12          II.     Motions to Strike

13          In their Reply briefs, Defendants move to strike much of the evidence submitted by

14   Plaintiff in support of her Response to their Motions for Summary Judgment.  (Dkt. Nos. 55 at 6

15   n.3, 57 at 3-4, 58.)  Defendants assert a variety of reasons why the evidence should be stricken,

16   including that the deposition transcript excerpts put forward by Plaintiff are unauthenticated and

17   several declarations are unsigned.  (Id.)

18          On July 21, 2016—six days after Defendants' Reply briefs were filed and the Motions for

19   Summary Judgment became ripe for the Court's consideration—Plaintiff filed "Appendix A to

20   Plaintiff's Reply to Defendants' Motion for Summary Judgment."  (Dkt. No. 64.)  In that

21   filing—composed of two declarations from Plaintiff's counsel and an amended version of

22   Exhibit E to Plaintiff's counsel's original declaration—Plaintiff's counsel purports to "refut[e]"

23   the deficiencies identified by Defendants by authenticating the deposition transcript excerpts

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 4

originally filed with Plaintiff's Response, and by replacing Exhibit E with actual deposition transcripts.  (Id.)

On July 26, 2016, Defendants King County and Major Edwin Bautista moved to strike Plaintiff's "Appendix A to Plaintiff's Reply to Defendants' Motion for Summary Judgment." (Dkt. No. 65.)  In that motion, Defendants ask the Court to strike the filing in its entirety as untimely and for failure to comply with Local Civil Rules 7(b)(2) and 7(g), which set out what may be submitted in opposition to a motion for summary judgment and under what circumstances a surreply may be filed.  (Id.)

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment."  Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002).  "Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Id. (citing Fed. R. Evid. 901(a)) (internal quotation marks omitted).

The Court GRANTS the motions to strike as follows.  First, Plaintiff's "Appendix A to Plaintiff's Reply to Defendants' Motion for Summary Judgment," (Dkt. No. 65), is stricken in its entirety because it is an untimely attempt to correct deficiencies filed in response to a motion to strike, and it does not comply with the rules regarding summary judgment briefing and surreplies.

Next, of the evidence submitted together with Plaintiff's Response, Exhibits A, B, C, D, E, G, H, and O to the Declaration of Beverly Grant, (Dkt. No. 53 at 19-21), are stricken because they are deposition transcript excerpts filed without the reporter's certification that the deposition is a true record of the testimony of the deponent, and therefore is unauthenticated.  See Orr, 285 F.3d at 774 ("A deposition or an extract therefrom is authenticated in a motion for summary

1  judgment when it identifies the names of the deponent and the action and includes the reporter's

2  certification that the deposition is a true record of the testimony of the deponent.")  Similarly,

3  Exhibits F and I are stricken because although they contain the deponent's name and the

4  reporter's certification, they do not identify the name of the action, and therefore are

5  unauthenticated.  Id.

6      Exhibits J and K are stricken because they are unsigned and therefore unsworn

7  declarations.  See, e.g., Curtis v. Illumination Arts, Inc., 2013 WL 6173799, at *10 (W.D. Wash.

8  Nov. 21, 2013) (striking unsigned declaration and refusing to consider it on summary judgment

9  because unsigned declarations do not comply with 28 U.S.C. § 1746).

10     Exhibit M, which appears to be composed of print-outs of a spreadsheet maintained by

11  the Internal Investigation Unit that tracks complaints made against Defendant Hardy among

12  others, is stricken because it is unauthenticated.  It is not apparent from the document exactly

13  what it is, how it was obtained, who created it, when it was created, and whether it has been

14  edited.  See Orr, 285 F.3d at 776 ("… an inquiry into authenticity concerns the genuineness of an

15  item of evidence…").  The document contains no signatures or dates.  Plaintiff's counsel's

16  declaration—which states only "I have reviewed the Depositions and Declarations of: . . . m.

17  Exhibit "M" IIU Complaint KC-SCA-0019796 Provided by the Defense"—is insufficient for the

18  Court to conclude that the spreadsheet pages are what Plaintiff claims them to be.  See Orr, 285

19  F.3d at 773-74.

20     Accordingly, in considering Defendants' Motions for Summary Judgment, the Court will

21  consider only the following evidence presented by Plaintiff: (1) Exhibits L and N to the

22  Declaration of Beverly Grant, (Dkt. No. 53 at 19-21); (2) the Declaration of Linda Holloway

23

24

1  filed on June 30, 2016, (Dkt. No. 49); and (3) the Declaration of Katrina Stuver filed on June 30,

2  2016, (Dkt. No. 50).

3      III.      Sexual Harassment Under Hostile Work Environment Theory

4      To establish a prima facie case for a hostile work environment claim based on sexual

5  harassment under federal law[1], Plaintiff must show: (1) she was subjected to verbal or physical

6  conduct of a sexual nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently

7  severe or pervasive to alter the conditions of employment and create an abusive work

8  environment.  Fuller v. City of Oakland, Cal., 47 F.3d 1522, 1527 (9th Cir. 1995).  The working

9  environment "must both subjectively and objectively be perceived as abusive.  Objective

10  hostility is determined by examining the totality of the circumstances and whether a reasonable

11  person with the same characteristics as the victim would perceive the workplace as hostile."

12  Craig v. M & O Agencies, Inc., 496 F.3d 1047, 1055 (9th Cir. 2007) (internal quotation marks

13  and citations omitted).  In other words, "a female plaintiff states a prima facie case of hostile

14  environment sexual harassment when she alleges conduct which a reasonable woman would

15  consider sufficiently severe or pervasive to alter the conditions of employment and create an

16  abusive working environment."  Ellison v. Brady, 924 F.2d 872, 879 (9th Cir. 1991).  In

17  evaluating the conduct at issue, the required level of severity or seriousness varies inversely with

18  the pervasiveness or frequency of the conduct.  McGinest v. GTE Serv. Corp., 360 F.3d 1103,

19  1113 (9th Cir. 2004).

20      Under Washington law, a prima facie case requires that: (1) Plaintiff suffered offensive,

21  unwelcome conduct; (2) the harassment was because of sex or gender; (3) the harassment

22  _____

23      [1] "Sexual harassment falls into two major categories: hostile work environment and quid
pro quo." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000).  Plaintiff's claim here

24  is brought under the hostile work environment category only.  (See Dkt. No. 53.)

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 7

1  affected the terms or conditions of employment; and (4) the harassment can be imputed to the

2  employer.  Washington v. Boeing, 105 Wn. App. 1, 12-13 (2000).

3      Defendants argue that Plaintiff's claim for hostile work environment sexual harassment

4  fails because the conduct complained of is (1) not of a sexual nature, and (2) not severe or

5  pervasive enough to alter the conditions of employment.  (Dkt. Nos. 37 at 8, 43 at 6.)

6  Additionally, Defendant King County argues that Plaintiff cannot show that any supervisor

7  harassment by Defendant Captain Hardy is imputable to the County.  (Dkt. No. 37 at 12-14.)

8      Plaintiff appears to argue Captain Hardy's conduct was of a sexual nature, was

9  sufficiently severe or pervasive to create an abusive work environment, and rendered the

10  conditions of her employment so intolerable as to constructively discharge her.  (See Dkt. No.

11  53.)  A "compound" hostile work environment constructive discharge claim "can be regarded as

12  an aggravated case of" hostile work environment sexual harassment, requiring a plaintiff to show

13  working conditions so intolerable that a reasonable person would have felt compelled to resign.

14  Pennsylvania State Police v. Suders, 542 U.S. 129, 147 (2004).  "Under the constructive

15  discharge doctrine, an employee's reasonable decision to resign because of unendurable working

16  conditions is assimilated to a formal discharge for remedial purposes."  Id. at 141.  "The inquiry

17  is objective: Did working conditions become so intolerable that a reasonable person in the

18  employee's position would have felt compelled to resign?"  Id.  To establish constructive

19  discharge under Washington law, "the employee must show: (1) a deliberate act by the employer

20  that made his working conditions so intolerable that a reasonable person would have felt

21  compelled to resign; and (2) that he or she resigned because of the conditions and not for some

22  other reason."  Washington, 105 Wn. App. at 15.

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 8

1   In support of her contentions, Plaintiff presents the following facts:  Captain Hardy on

2   multiple occasions followed Plaintiff to the workplace gym, timing his visits to coincide with

3   hers even when she changed the timing of those visits.  (Dkt. No. 53-1 at 82-83.)  At the gym,

4   Hardy would stand directly behind Plaintiff, staring at her and making comments like "[you]

5   look[] good for [your] age" and "[Hardy] could see why it was that [Plaintiff] looked as good as

6   [she] did."  (Id.)  Plaintiff observed Hardy's reflection in the gym window and could see him

7   watching her.  (Id.)  Captain Hardy aggressively micromanaged Plaintiff's conduct, holding her

8   to a higher standard than others and asking other employees to report actions they did not agree

9   with so that Hardy could call Plaintiff into his office and denigrate her.  (Id. at 81.)  Captain

10  Hardy bullied Plaintiff because he "does not like women who stand up for themselves," and once

11  forced Plaintiff to sit in the front of the room during roll call without a reason, an example of him

12  giving her directives he did not give to other employees.  (Id. at 82-84.)

13      Plaintiff asserts that she was constructively discharged as a consequence of the stress

14  caused by the harassment described above, and was forced to leave the Regional Justice Center

15  in Kent and transfer to the DAJD facility in Seattle.  Plaintiff has presented evidence that as a

16  result of this transfer, she lost approximately $5,000 in yearly benefits including an educational

17  stipend and a longevity bonus.  (Dkt. No. 53-1 at 78-87.)

18      Viewing the evidence in the light most favorable to Plaintiff, the Court concludes that a

19  reasonable fact finder could find that Hardy's conduct, including making comments like "you

20  look good for your age" while observing Plaintiff exercise, were of a sexual nature.  The Court

21  concludes that a reasonable fact finder could find that, from a reasonable woman's perspective,

22  Hardy's conduct was sufficiently severe or pervasive as to create an abusive work environment.

23  Although a reasonable fact finder could also easily find that the conduct complained of is

24

1  nothing but the type of minor slight or annoyance that all employees regularly endure as part of

2  any workplace, see, e.g., E.E.O.C. v. Prospect Airport Services, Inc., 621 F.3d 991, 998 (9th Cir.

3  2010) ("Title VII is not a general civility code"), the Court finds that Plaintiff has presented just

4  enough evidence to create a triable issue of material fact and to foreclose summary judgment on

5  this basis.

6          Finally, Defendants argue that at least some of the conduct complained of falls outside of

7  the statute of limitations, and should not be considered for purposes of Defendant's summary

8  judgment motions.  (Dkt. No. 37 at 9-10.)  "A charge alleging a hostile work environment claim,

9  however, will not be time barred so long as all acts which constitute the claim are part of the

10 same unlawful employment practice and at least one act falls within the time period."  Nat'l R.R.

11 Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002).  Here, there is evidence of sexual

12 harassment occurring after the August 2012 limitation date put forward by Defendants, including

13 a 2014 incident where Plaintiff asserts Captain Hardy stared at her backside while she was

14 exercising at the workplace gym, telling her she "looked good for her age."  (See Dkt. No. 39 at

15 7.)  The Court finds that there exists a genuine issue of material fact as to whether or not all of

16 the sexual harassment alleged constitutes part of the same unlawful employment practice.

17         Having determined that genuine issues of material fact foreclose summary judgment on

18 the bases that the conduct complained of is not of a sexual nature and is not severe or pervasive

19 enough to alter the conditions of employment, the Court turns to Defendant King County's

20 argument that Captain Hardy's harassment is not imputable to it as the employer.

21 /

22 /

23 /

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 10

1        A.      Harassment Imputable to King County and Vicarious Liability

2                i.      Supervisor Harassment and Affirmative Defense

3        Under Washington law, where an owner, manager, partner or corporate officer personally

4 participates in the harassment, the harassment is imputed to the employer.  Glasgow v. Georgia-

5 Pac. Corp., 103 Wn.2d 401, 407 (1985).  Managers are those who have been given by the

6 employer the authority and power to affect the hours, wages, and working conditions of the

7 employer's workers.  Robel v. Roundup Corp., 148 Wn.2d 35, 48 n.5 (2002).

8        The Court finds that a genuine issue of material fact regarding whether a manager

9 participated in harassment precludes summary judgment under Washington law because a

10 reasonable fact finder could conclude that Captain Hardy had control over Plaintiff's wages,

11 hours, and working conditions, and thus that his harassment is imputable to King County.  See

12 Glasgow, 103 Wn.2d at 407.

13        Under Title VII, when harassment by a supervisor is at issue, an employer is vicariously

14 liable, subject to a potential affirmative defense.  See Faragher v. City of Boca Raton, 524 U.S.

15 775, 780 (1998).  If the supervisor's harassment culminates in a tangible employment action, the

16 employer is strictly liable.  Vance v. Ball State Univ., 133 S. Ct. 2434, 2439 (2013).  A

17 "supervisor" is any individual empowered by the employer to take tangible employment actions

18 against the victim.  Id.  A tangible employment action is "a significant change in employment

19 status, such as hiring, firing, failing to promote, reassignment with significantly different

20 responsibilities, or a decision causing a significant change in benefits."  Id. at 2442.

21 Constructive discharge can constitute a tangible employment action foreclosing the

22 Ellerth/Farragher affirmative defense "if the plaintiff quits in reasonable response to an

23 employer-sanctioned adverse action officially changing her employment status or situation, for

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 11

1   example, a humiliating demotion, extreme cut in pay, or transfer to a position in which she

2   would face unbearable working conditions." Pennsylvania State Police, 542 U.S. at 134.

3       If no tangible employment action is taken, the employer may escape liability by

4   establishing, as an affirmative defense, that (1) the employer exercised reasonable care to prevent

5   and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take

6   advantage of the preventive or corrective opportunities that the employer provided.  Id. at 2439.

7   "Whether the employer has a stated antiharassment policy is relevant to the first element of the

8   defense.  And an employee's failure to use a complaint procedure provided by the employer will

9   normally suffice to satisfy the employer's burden under the second element of the defense."

10  Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 877 (9th Cir. 2001) (citing Burlington

11  Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998) (internal quotation marks omitted).

12      Defendant King County argues that no tangible employment action was taken, that it

13  exercised reasonable care to correct harassing behavior by conducting "prompt and thorough"

14  investigations each time Plaintiff complained, and that Plaintiff failed to take advantage of

15  corrective opportunities because she reported some but not all of the harassment at issue here.

16  (Dkt. No. 37 at 12-14.)

17      Plaintiff has presented evidence that she and others reported Captain Hardy's conduct up

18  the chain of command multiple times, and that King County's actions in response to the

19  complaints were not reasonable because, inter alia, "[t]here were numerous attempts by

20  management to avoid formal investigation in favor of mediation."  (Dkt. No. 53-1 at 65-71, 78-

21  87.)  The Court finds that genuine issues of material fact regarding whether King County

22  exercised reasonable care in the way it handled Plaintiff's complaints about Captain Hardy's

23  conduct and about whether Plaintiff took advantage of any preventative or corrective

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 12

1  opportunities preclude summary judgment under federal law on the basis of the <u>Faragher</u>/<u>Ellerth</u>

2  affirmative defense.

3      In sum, summary judgment as to the hostile work environment sexual harassment claims

4  is DENIED.

5      IV.     Retaliation

6       To establish a prima facie case of retaliation under both federal and Washington law,

7  Plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse

8  employment action, and (3) there was a causal link between her activity and the employment

9  decision.  <u>Stegall v. Citadel Broad. Co.</u>, 350 F.3d 1061, 1065-66 (9th Cir. 2003).

10      Title VII's "antiretaliation provision, unlike the substantive provision, is not limited to

11  discriminatory actions that affect the terms and conditions of employment."  <u>Burlington N. &</u>

12  <u>Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 64 (2006).  To demonstrate that she suffered an adverse

13  employment action under the antiretaliation provision, Plaintiff "must show that a reasonable

14  employee would have found the challenged action materially adverse, which in this context

15  means it well might have dissuaded a reasonable worker from making or supporting a charge of

16  discrimination."  <u>Id.</u> at 68 (internal quotation marks and citation omitted).  The action must be

17  materially adverse because an employee's "decision to report discriminatory behavior cannot

18  immunize that employee from those petty slights or minor annoyances that often take place at

19  work and that all employees experience."  <u>Id.</u>

20      Defendants argue that Plaintiff's retaliation claims fail because Plaintiff did not suffer an

21  adverse employment action, and even if she did, there is no causal link between her reporting of

22  discrimination and harassment and the adverse employment action.  (Dkt. Nos. 37 at 14-20, 43 at

23  16-22.)

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 13

1    Plaintiff's complaint, (Dkt. No. 4), asserts a variety of factual bases and legal theories for

2    her retaliation claims.  The section titled "Retaliation" in Plaintiff's Response to Defendant's

3    Motions for Summary Judgment, however, only references the incident discussed below: Captain

4    Hardy's denial of her temporary transfer request and his later recommendation that Plaintiff be

5    sent for fitness for duty training and moved to Seattle.  (See Dkt. No. 53 at 12.)  Because

6    Plaintiff is not proceeding pro se, the Court construes Plaintiff's failure to raise any other factual

7    basis or theory for her retaliation claims as the voluntary abandonment of the other bases, and

8    accordingly does not address them here.

9    Plaintiff "alleges retaliation by Hardy because he recommended that she be sent

10   downtown and be placed on a fitness for duty regiment."  (Dkt. No. 53 at 12-15.)  Sometime

11   around June 2014, Plaintiff requested a break from her unit through a request for a temporary

12   reassignment.  (Dkt. Nos. 41-3 at 6-11, 53-1 at 78-87.)  Captain Hardy denied Plaintiff's request.

13   (Id.)  Later that same day, Plaintiff spoke with Major Clark, who overrode Hardy's decision

14   regarding the break and granted Plaintiff the temporary transfer she had requested.  (Id.)

15   Plaintiff alleges Hardy was upset that Plaintiff had challenged his decision, and therefore

16   recommended Plaintiff receive remedial "fit-for-duty" training and be transferred from the

17   Regional Justice Center to the downtown Seattle facility.  (Id.)  Major Bautista and Director

18   Hayes did not agree with the recommendations for training and transfer, and they were not

19   implemented.  (Dkt. Nos. 39 at 7, 40 at 8-9.)  Plaintiff remained at the Regional Justice Center

20   until the following year, when, as described above, she voluntarily transferred to the DAJD

21   facility in Seattle.  (Dkt. Nos. 39 at 7, 40 at 8-9, 41-3 at 6-11, 53-1 at 78-87.)

22   Defendants argue that Hardy's denial of the requested break and recommendations for

23   remedial training and transfer cannot constitute adverse employment actions as a matter of law

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 14

1    because they were overridden before they could take effect, and therefore Plaintiff was in no way

2    actually affected by them.  (Dkt. Nos. 37 at 14-20, 43 at 16-22.)  Plaintiff argues that the

3    recommendations constitute adverse employment actions because "[s]imply stated, Hardy

4    exceeded his authority."  (Dkt. No. 53 at 12.)  Plaintiff argues that captains, like Hardy, may not

5    send employees for fitness for duty training, which is evidenced by upper management's

6    decision not to implement the recommendations.  (Id.)

7         The Court agrees with Defendants and finds that Plaintiff's retaliation claims fail as a

8    matter of law because no reasonable fact finder could conclude she suffered an adverse

9    employment action based on the incident discussed above.  Hardy's recommendations—whether

10   or not he exceeded his authority in making them—cannot have adversely affected Plaintiff

11   because they were never implemented.  While these interactions may have been emotionally

12   upsetting, they are not the type of materially adverse actions that might dissuade a reasonable

13   worker from making or supporting a charge of discrimination.  See Burlington N. & Santa Fe

14   Ry. Co., 548 U.S. at 68.  Summary judgment as to Plaintiff's retaliation claims is GRANTED.

15         V.      Negligent Supervision or Retention

16         Washington does not recognize claims for negligent supervision or retention by an

17   employee against his or her employer when the negligence claim relies on the same facts used to

18   support an employee's discrimination claim.  Francom v. Costco Wholesale Corp., 98 Wn. App.

19   845, 866, 991 P.2d 1182, 1193 (2000) (affirming dismissal of plaintiff's negligence claim as

20   "duplicative" of employment discrimination claim).

21         Defendants argue that because Plaintiff has failed to identify facts to support her

22   negligent supervision or retention claim that differ from the facts used to support her

23

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 15

1   employment discrimination claims, the negligence claim must be dismissed.  (Dkt. No. 37 at 24.)

2   Plaintiff does not address her negligence claim in either of her Responses.  (Dkt. Nos. 53, 53-2.)

3        Plaintiff has not identified any facts to support her negligent retention claim, and

4   therefore has not created a genuine issue of material fact as to the existence of separate facts to

5   support this claim.  Summary judgment in favor of Defendants on Plaintiff's negligence claim is

6   GRANTED.

7        VI.     Major Bautista

8        Defendant Major Bautista moves for summary judgment on all claims against him

9   because Plaintiff has failed to put forward a single fact establishing liability on his part.  (Dkt.

10  No. 57 at 3.)  The Court agrees and DISMISSES Major Bautista and Jane Doe Bautista from this

11  action.

12                              **Conclusion**

13       The Courts GRANTS the Motions to Strike (Dkt. Nos. 55, 57, 65) as indicated above.

14  The Court GRANTS the Motions for Summary Judgment (Dkt. Nos. 37, 43) as to Plaintiff's

15  retaliation claims, as to the negligent supervision or retention claim, and as to all claims against

16  Defendant Major Bautista.  The Court DENIES summary judgment as to the hostile work

17  environment sexual harassment claims.  The case will proceed to trial on the hostile work

18  environment sexual harassment claims.  The clerk is ordered to provide copies of this order to all

19  counsel.

20
        Dated this 17th day of August, 2016.

21

22

23                                     Marsha J. Pechman
                                       United States District Judge
24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT- 16